UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


**FILED**

**JAN 1 2 2012**

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

DONALD L. CHAMPAGNE,

    Debtor.

_____/

Case No. 6:10-bk-14228-ABB
Chapter 7

DONALD L. CHAMPAGNE,

    Plaintiff,

v.

EDUCATIONAL CREDIT
MANAGEMENT CORP.,

    Defendant.

_____/

Adv. Pro. No. 6:10-ap-00285-ABB

## <u>MEMORANDUM OPINION</u>

This matter came before the Court on the Complaint to Determine Dischargeability of All Student Loans (Doc. No. 1) filed by pro se Debtor/Plaintiff Donald L. Champagne ("Debtor") against the United States Department of Education pursuant to 11 U.S.C. Section 523(a)(8). Defendant Education Credit Management Corporation (ECMC) is the owner and holder of the consolidated student loan at issue in this adversary proceeding and was substituted as the sole Defendant in place of the United States Department of Education (Doc. No. 23). Debtor seeks discharge of approximately $82,000.00 in student loan debt.

The final evidentiary hearing was held on December 13, 2011, at which Debtor, his counsel, and counsel for the Defendant appeared.[1] Judgment is due to be entered in favor of Debtor pursuant to 11 U.S.C. Section 523(a)(8) for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

Debtor is forty-one years old. He graduated in 1993 from Western Michigan University with a bachelor's degree in economics; he enrolled in the University of Phoenix Master of Business Administration program in 2004 but did not obtain his MBA. He financed his education through student loans now consolidated and owned by ECMC. Debtor's student loan debt is approximately $82,000.00 which he seeks to discharge on the ground repayment would impose an undue hardship upon him.

He has significant health problems. He was diagnosed human immunodeficiency virus (HIV) positive in 1999; he suffers from severe depression, anxiety, and attention deficit disorder (ADD). He struggles with alcoholism.

Debtor has approximately $50,000.00 in medical debt. A public assistance program currently provides Debtor with medications for his mental health issues and HIV at no cost. This benefit is based on income; Debtor may become responsible for some portion of the medication cost in the future if his income increases. The full cost of the medications would be $1,000.00 monthly if he were to pay for them himself.

---

[1] Debtor was pro se when he filed the adversary complaint. He later obtained counsel by whom he was represented at the final evidentiary hearing.

2

He has been homeless serially since 2003 and has spent a significant amount of time living on the streets of Orlando. He receives his mail general delivery. He does not own a vehicle or have a driver's license. He had been a guest at a friend's home for almost a year on the hearing date but had been told he must leave by January 3, 2012. He did not know where he would live once he left the friend's home.

Debtor continues to seek employment, but his earning potential is low. He worked full-time in the financial services industry from 1993 to 1996, prior to experiencing his mental health problems; he has had only sporadic employment over the last ten years, earning an average of $8,000.00 annually over the last decade. His most recent part-time work was three days in April 2011; his last full-time employment was five weeks in the Spring of 2010. He currently receives $200.00 per month in public assistance.

Debtor's health problems are treated with medications that cause extreme lethargy. He has been untimely and undependable in appearing for work and has been fired from several jobs as a result. A misdemeanor conviction he received in 2006 for driving under the influence (DUI) has made obtaining and retaining employment difficult as many employers in Orlando refuse to hire anyone with a criminal background.

Debtor is aware he is eligible for enrollment in the William D. Ford Direct Loan Program ("the Ford program") which would allow income-based repayment of his student loans. Debtor's monthly payments would be $0.00 based on his current income. All student loan indebtedness would be forgiven after twenty-five years regardless of the remaining loan balance. Debtor has rejected this option on the basis he prefers the fresh start provided by discharge of the student loan indebtedness to a twenty-five-year

3

income-based loan repayment obligation. He is also concerned he would incur tax liability when his loan balance would be forgiven.

Debtor made student loan payments in the late 1990s. He consolidated his loans and has been diligent about obtaining deferment and forbearance while he has been unable to make payments.

Debtor's circumstances establish undue hardship, as required by the law to obtain discharge of educational loan debt. Defendant concedes Debtor cannot maintain a minimal standard of living for himself, even in the absence of being required to repay the loans. Debtor's health problems and the lethargy induced by the treatment of those problems are circumstances beyond his control, are serious impediments to his employment, and are not likely to change in the future. Debtor made good faith efforts to pay his loans when he was able and kept the loans in deferment or forbearance status through his financial difficulty rather than defaulting.

Debtor's student loan indebtedness is discharged pursuant to Section 523(a)(8) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

### *11 U.S.C. § 523(a)(8)*

Section 523(a)(8) of the Bankruptcy Code "provides that student loans generally are not to be discharged. A narrow exception is made, however, where 'excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents.'" Education Credit Management Corp., v. Mosley, 494 F.3d 1320, 1324 (11th Cir. 2007) (quoting 11 U.S.C. Section 523(a)(8)).

4

"Undue hardship" is a mixed question of fact and law. Id. at 1324 (citation omitted). The Bankruptcy Code does not define "undue hardship;" the Eleventh Circuit has adopted the standard set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2d Cir.1987). Mosley, 494 F.3d at 1324 (citing Hemar Ins. Corp. of Am. v. Cox, 338 F.3d 1238, 1241 (11th Cir. 2003)). The party seeking discharge of an educational loan debt carries the burden of proof. The debtor must demonstrate by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself] and [her] dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

Mosley, 494 F.3d at 1324-25 (quoting Brunner, 831 F.2d at 396). The Brunner test "[r]equir[es] evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." Brunner, 831 F.2d at 396.

"[C]ongress, in enacting § 523(a)(8), set a high bar for a debtor seeking to discharge government-guaranteed educational loans." Educational Credit Management Corp., v. Frushour, 433 F.3d 393, 403 (4th Cir. 2005). The Brunner requirements are "demanding," Brightful v. Pennsylvania Higher Educ. Assistance Agency, 267 F.3d 324, 328 (3d Cir. 2001); and the debtor has the burden of proving all three requirements by a preponderance of the evidence. Frushour, 433 F.3d at 400.

5

*Analysis*

Debtor established repayment of his $82,000.00 student loan indebtedness would cause him undue hardship.

ECMC concedes Debtor has established he is unable to maintain a minimal standard of living, even in the absence of student loan repayment. Debtor's income is $200.00 monthly in public assistance. He takes medications that would cost $1,000.00 per month if he were not receiving public assistance that covers their cost. He has not been successful in obtaining and retaining employment. He has been serially homeless since 2003 and has no car and no driver's license.

The evidence established the second Brunner factor: additional circumstances indicate Debtor's inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period of the student loans. Courts applying Section 523(a)(8) have found a debtor's "inability to pay must be 'likely to continue for a significant time,' such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period." Mosley, 494 F.3d at 1326 (quoting Cox 338 F.3d at 1242; Brightful, 267 F.3d at 328).

Debtor continues to seek employment, but he faces significant employability challenges that are not likely to change. He has debilitating mental health problems, treatment of which causes extreme lethargy. He has been untimely and undependable in appearing for work and has been fired from several jobs as a result. His 2006 misdemeanor DUI conviction has made obtaining and retaining employment difficult as many employers in Orlando refuse to hire anyone with a criminal background.

6

Debtor's work history demonstrates the unlikelihood he will be employed consistently in the future. He has had only sporadic employment over the last decade. He earned an average of $8,000.00 per year during that time. His most recent part-time work was three days in April 2011; his last full-time employment was five weeks in the Spring of 2010.

Debtor established the third <u>Brunner</u> factor. He has acted in good faith with respect to his student loans. He made payments on his student loans in the 1990s, while he was employed in the financial services industry. He consolidated his loans and was diligent about obtaining deferments and forbearance when he could not make loan payments. He did not default. He did all this even though he has no telephone, receives his mail general delivery, and has no driver's license or vehicle to drive to the post office.

Defendant argues Debtor's rejection of the income-based repayment option available under the Ford program demonstrates his lack of good faith, especially when payments would be $0.00 at Debtor's current income level. There is no per se rule a debtor cannot show good faith where he or she has not enrolled in an income-contingent repayment program. <u>Mosley</u>, 494 F.3d at 1327. Debtor's concern about potential future tax liability is not unwarranted; it is unlikely he would have the resources to pay a tax bill on $82,000.00 of forgiven student loan debt. His preference for a fresh start is reasonable given the disparity between his student loan debt ($82,000.00) and his current income ($200.00 per month in public assistance), the difficulty he has experienced retaining employment, and the high cost of his medications if he were to lose the public assistance benefit that currently pays those costs.

7

Debtor has established by a preponderance of the evidence his student loan indebtedness is dischargeable pursuant to Section 523(a)(8) of the Bankruptcy Code. Any and all indebtedness owed by Debtor to ECMC is discharged. Judgment is due to be entered in favor of Debtor.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in Debtor's Complaint (Doc. No. 1) is hereby **GRANTED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed by Debtor to ECMC is **DISCHARGED** pursuant to 11 U.S.C. Sections 523(a)(8).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 12th day of January, 2012.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

8